**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **DAVID ROGERS HILL,** | ) | |
| Petitioner | ) | **Civil Action No. 7:12cv00520** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WARDEN, GREEN ROCK** | ) | |
| **CORRECTIONAL  CENTER,** | ) | **By: Norman K. Moon** |
| Respondent. | ) | **United States District Judge** |

Petitioner David Rogers Hill, a Virginia inmate proceeding *pro se*, filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  In an amended petition totaling over 440 pages, including exhibits, Hill alleges twelve grounds for relief, arguing that the trial court committed various errors of law during his trial and that his counsel provided ineffective assistance.[1]  The Supreme Court of Virginia found that Hill's claims regarding trial court and prosecutor error were defaulted under *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), and that his remaining ineffective assistance of counsel claims failed on their merits under *Strickland v. Washington*, 466 U.S. 668 (1984).  This court finds that the state court's adjudication of those claims was not contrary to, or an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts.  Therefore, the Court grants respondent's motion to dismiss.

**I.**

Following a jury trial, Hill was convicted in the Circuit Court for Halifax County of aggravated malicious wounding, use of a firearm in the commission of an aggravated malicious wounding, abduction, and use of a firearm in the commission of abduction.  The court imposed the sentenced recommended by the jury, 28 years and 6 months imprisonment.  Hill appealed,

---

[1] Hill was twice granted leave to amend his petition to file additional exhibits and correct certain dates.

arguing that the evidence was not sufficient to support the finding that Hill was guilty of aggravated malicious wounding or use of a firearm in the commission of aggravated malicious wounding, and that the trial court erred in denying Hill's motion to set aside the jury verdict. The Court of Appeals of Virginia denied his appeal.  Hill appealed to the Supreme Court of Virginia, which refused his appeal and his petition for rehearing.

In its order denying Hill's direct appeal, the Court of Appeals of Virginia summarized the evidence as follows:

> On December 4, 2006, Hill contacted [Betty] Dunkley[2] about a school book their son had left at [Hill's] residence. Dunkley went to Hill's parents' home and telephoned Hill about the book. He agreed to bring the book to her.  When he arrived at his parents' home, however, he did not have the book.  Dunkley got into her car and left, and Hill followed her in his own vehicle.  Dunkley stopped at the end of Hill's mile-long driveway, hoping that he would go get the book for her. Instead, Hill approached Dunkley's car.  He accused her of spending the weekend at a motel with another man.  Dunkley continued to ask for the child's book. Hill agreed and went to his car.
>
> Hill returned to Dunkley's vehicle holding a shotgun.  Hill pointed the gun at Dunkley and ordered her out of the car. After she complied, Hill hit Dunkley in the face with his hand. Hill continuously beat Dunkley, striking her with his fist and the gun. Hill put Dunkley into the driver's seat of his car. She tried to escape, but he continued beating her through the window of the car. Hill struck Dunkley in the face and the back of her hips using his hands and the gun. Hill moved Dunkley to the passenger seat of the car. Hill got into the car and started driving toward the house. Dunkley jumped out of the moving vehicle. Hill stopped the car and got Dunkley inside once again. Dunkley testified she could not remember how Hill got her into the car again, but said "the beating just never stopped."  After the car began moving down the driveway toward the house, Dunkley repeated her attempt to escape by opening the car door. Her legs were dragging on the ground while the car was moving, but Hill held Dunkley in the vehicle.
>
> The vehicle reached the vicinity of the house. Dunkley testified she was unable to walk. Hill ordered her to get into the trunk, aimed the gun at her, and said he was going to kill her. Dunkley heard the sound of a gunshot.  Dunkley remembered being inside the trunk of the car, but did not know how she got there. Hill tried to close the trunk, but Dunkley held up the lid with her hands and knees.  Deputy Anthony Hamlett and two other police officers arrived at Hill's home during the incident. Hill's vehicle was stopped in the driveway. Hill was standing at the back of the car and pointing a shotgun at the trunk. Hamlett could see Dunkley's legs and feet protruding from the trunk. The police ordered

---

[2] Betty Dunkley is the victim of the crimes of which Hill was convicted.  She is also the mother of two of Hill's children, and, until shortly prior to the offenses, had lived with him for a number of years.

Hill to lower his weapon, but he did not. Hill proceeded to the rear of his house and out of sight. Hamlett looked inside the trunk and found Dunkley, who had been beaten severely. She was screaming and was covered in blood and dirt.

The police retrieved Dunkley out of the trunk and took her to receive emergency medical treatment. Dunkley was hospitalized until December 16, 2006. Dunkley sustained a broken nose, a broken knee, and bruising and swelling. Through surgery, doctors placed a plate and screws in Dunkley's knee. Dunkley testified a visual scar remained on her knee, and she continued to have pain in the knee after working for a day.  Dunkley missed eight weeks of work as a result of the injuries she sustained. The Commonwealth introduced photographs of the injuries Dunkley sustained in the incident.

(Record No. 0754-08-2, Dec. 3, 2008).

Hill, proceeding *pro se*, filed a timely habeas petition in the Circuit Court for Halifax

County alleging:

1. The trial court erred in failing to excuse for cause two jurors, one who stated she thought she worked with the victim Betty Dunkley "years ago," and the other who knew several of the witnesses in the case.

2. The trial court erred in failing to remove a juror who improperly responded to the commonwealth attorney's closing argument, commenting aloud that Hill placed the victim in the trunk of the car in order to kill her.

3. The trial court erred by not allowing Hill to address the court, after he requested permission to speak following the court's denial of the defense theory and jury instruction regarding involuntary intoxication.

4. Counsel was ineffective for failing to conduct "independent voir dire" on two jurors, one who knew the victim and the other who knew several witnesses in the case, and failing to strike these jurors for cause.

5. Counsel was ineffective for failing to object to a comment made by a juror during the commonwealth attorney's closing argument.

6. Counsel was ineffective for failing to adequately impeach the testimony of the victim at trial.

7. Counsel was ineffective for failing to use the 911 summary report to impeach witness testimony at trial.

8. Counsel was ineffective for failing to interview and investigate Virginia State Police Officer D.H. Hess, who was at the scene with local police, including his version of events and his dash camera.

9.  The government knowingly permitted perjured testimony by witnesses at trial.

10.  Counsel was ineffective for failing to present evidence to support the defense and jury instruction regarding involuntary intoxication.

11.  Counsel was ineffective for failing to develop and/or present evidence to support the defense of insanity.

12.  Counsel was ineffective for failing to adequately consult and inform Hill regarding matters related to his trial and defense.

The circuit court dismissed Hill's habeas petition, finding that claims 1, 2, 3 and 9, regarding trial court and prosecutor error, were defaulted under *Slayton,* and that his remaining claims, regarding ineffective assistance of counsel, failed under *Strickland.*  Hill appealed to the Supreme Court of Virginia, which dismissed his petition.[3]

Hill filed his § 2254 federal habeas petition on October 26, 2012, asserting the same 12 claims raised in his state habeas petition, as set forth above.[4]  The respondent has filed a motion to dismiss and Hill has responded, making the matter ripe for disposition.

## II.

The state court, on habeas review, dismissed Hill's claims 1, 2, 3 and 9 as procedurally defaulted under *Slayton,* because Hill could have raised these claims at trial and on direct appeal, but he did not.  This Court finds that *Slayton* is an independent and adequate state procedural rule that bars federal habeas review unless a showing of cause and prejudice or a miscarriage of justice excuses the procedural default.  Because Hill does not show cause and prejudice or a miscarriage of justice, I will dismiss these claims.

---

[3] In dismissing Hill's petition for appeal on habeas review, the Supreme Court of Virginia, in effect, affirmed the disposition of Hill's claims by the circuit court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Thomas v. Davis*, 192 F.3d 445, 453 n.6 (4th Cir. 1999).

[4] Respondent concedes that Hill has exhausted his state remedies regarding all of his federal habeas claims. *See Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991) ("Exhaustion generally requires that the essential legal theories and factual allegations advanced in federal court be the same as those advanced at least once to the highest state court.").

A claim is defaulted where the state court expressly finds that review is barred by an independent and adequate state procedural rule. *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); *see also Lambrix v. Singletary*, 520 U.S. 518, 523 (1997). The Fourth Circuit has recognized *Slayton* as an adequate and independent procedural rule that renders the claim procedurally defaulted in this court. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006); *Wright v. Angelone*, 151 F.3d 151, 159–60 (4th Cir. 1998); *Mu'min v. Pruett,* 125 F.3d 192, 196 (4th Cir. 1997); *Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996); *Spencer v. Murray*, 18 F.3d 229, 232 (4th Cir. 1994).

However, a state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either: (1) cause and prejudice; or (2) a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel; 2) a factor external to the defense which impeded compliance with the state procedural rule; or 3) the novelty of the claim. *Id.* To avail himself of the actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, a petitioner "must offer new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)) (internal quotation marks omitted). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional magnitude. *Murray*, 477 U.S. at 488.

Hill does not offer evidence sufficient to establish his innocence under *Schlup v. Delo*. Instead, Hill attempts to show cause for his procedural default by arguing that his trial counsel rendered ineffective assistance, as set out in his various ineffective assistance claims. Hill also argues that the trial court and his counsel failed to protect his right to an impartial jury, as set out in claims 1, 2 and 4. However, as explained below, counsel did not render ineffective assistance in this case. Further, Hill has not established that any juror was not impartial, nor has he established how the alleged lack of an impartial jury impeded him from raising his claims at an earlier stage. Thus, Hill has failed to demonstrate cause to excuse his procedural default. *See Clozza v. Murray*, 913 F.2d, 1092, 1104 (4th Cir. 1990) (finding that a meritless ineffective assistance of counsel claim cannot excuse a procedural default). Accordingly, I will dismiss Hill's claims 1, 2, 3 and 9, regarding trial court and prosecutor error, as procedurally defaulted.

### III.

Hill claims that counsel provided ineffective assistance by failing to:

1. Conduct "independent voir dire" on two jurors, one who knew the victim, and the other who knew several witnesses in the case, and strike these jurors for cause. (claim 4)

2. Object to a comment made by a juror during the commonwealth attorney's closing argument, indicating aloud that Hill placed the victim in the trunk of the car in order to kill her (claim 5).

3. Adequately impeach the testimony of the victim at trial (claim 6).

4. Use the 911 summary report to impeach witness testimony at trial. Hill states the arrival times of the investigators to the scene, as shown on the summary report, prove they could not have "seen and/or did what" they testified to (claim 7).

5. Interview and investigate Virginia State Police Officer D.H. Hess, who was at the scene with local police, including his version of events and his dashboard camera (claim 8).

6.  Present evidence to support the defense of involuntary intoxication and the relevant jury instruction (claim 10).

7.  Develop and/or present evidence to support the defense of insanity (claim 11).

8.  Adequately consult and inform Hill of matters related to his trial and defense (claim 12).

The Supreme Court of Virginia adjudicated and rejected these claims, finding that they failed under *Strickland*.  I find that the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts.[5]  Accordingly, I will dismiss Hill's claims.

In order to establish a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687.  To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id*. at 688. There is a strong presumption that an attorney acts reasonably. *Id.* at 688–89.  To establish prejudice to his defense, a petitioner must demonstrate that but for his attorney's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694.  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.*

---

[5] When reviewing a claim adjudicated on the merits by a state court a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).  A state court's adjudication is considered contrary to clearly established federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. *Id.* at 413.  It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. *Id.* at 411.  Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When evaluating claims of ineffective assistance of counsel, federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland* . . . ." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Id.* at 123 (*quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." *Id.*

In claim 4, Hill asserts that counsel provided ineffective assistance by failing to conduct "independent voir dire" on two jurors, and by failing to move to strike these jurors for cause. These jurors were Vanessa Hammock, who stated she may have worked with the victim, and David Epps, who knew two of the witness investigators, as well as the defendant and his father.[6] In adjudicating this claim on habeas review, the state court found that the voir dire demonstrated that Hammock and Epps were qualified to sit as jurors. Both jurors stated that they would be able to listen to all of the evidence, follow instructions on the law and render a fair and impartial verdict. They also confirmed that they did not have an interest in the outcome of the case, had no information regarding the case, had not formed an opinion as to the outcome, had no bias or prejudice against the defendant or the commonwealth, and were able to presume that the defendant was innocent, with the burden on the commonwealth to establish guilt beyond a

---

[6] Hill states that by not conducting independent voir dire, his counsel failed to discover that Hammock worked with the victim for nearly 5 years at Tultex Manufacturing Inc. and that they were casual friends, and that Epps knew defendant had a reputation for being rowdy when intoxicated. However, as discussed below, Hill fails to establish actual bias on the part of either juror, and thus has not stated a claim under *Strickland* for his counsel's alleged failure regarding voir dire.

reasonable doubt.  The state court further found that, because there was no basis to believe that either prospective juror could not render a fair and impartial verdict, there was no basis for counsel to make a motion to excuse for cause, as such a motion would have been futile.  Based on the foregoing, the state court determined that Hill's claim failed under both prongs of *Strickland.*

The law is clear that if a potential juror demonstrates actual bias, she must be removed for cause, and if such a juror is erroneously seated, the resulting conviction must be reversed. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).  "Actual bias" is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (*citing United States v. Wood*, 299 U.S. 123, 133 (1936).  However, where the juror has not demonstrated actual bias, the court defers to counsel's discretion in deciding whether to use a peremptory challenge to strike her from the panel. *Gardner v. Ozmint*, 511 F.3d 420, 426 (4th Cir. 2007); *Bell v. True*, 413 F. Supp. 2d 657, 713–14 (W.D. Va. 2006) (denying habeas relief despite affidavit by a juror regarding conversations between unnamed "lady jurors" discussing their relationship with the victim and his family).  In the absence of proof that the two jurors in this case were actually biased, the court must defer to counsel's strategic choices as to which venire members to strike with peremptory challenges.  *Gardner*, 511 F.3d at 426. For the same reason, counsel could reasonably have believed that an objection to the seated jury on grounds that the court failed to strike Hammock or Epps for cause would not meet with success.

This Court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and

was not based on an unreasonable determination of the facts.  Accordingly, I will dismiss Hill's

claim 4.

      In claim 5, Hill asserts that counsel provided ineffective assistance by failing to object to

a comment made by a juror during the commonwealth attorney's closing argument, arguing that

counsel should have moved for a mistrial. During closing argument, the commonwealth attorney

said:

> What does one intend after you've beaten someone so severely and you put them in the
> trunk of a car?  What do you intend to do?  Are you going to put them in the trunk of the
> car to take them to the emergency room?  Put them in the trunk of the car to take them
> home?  Why do you put someone in the trunk of a car?

At this point, an unknown juror interjected, "To kill them."  (Trial Transcript, p. 286)  The state

court found that this claim warranted no relief, noting that Hill failed to specify what objection

counsel should have made.  Further, the state court found that it was "sound trial strategy to

avoid commenting on the statement as it would more likely bring more attention to the statement,

which would not benefit [Hill]."[7]  Finally, Hill could not establish any prejudice related to this

remark, as the jury acquitted Hill of the charge that the commonwealth attorney was arguing,

attempted murder.  For the reviewing court, the ultimate inquiry regarding juror misconduct

is whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict."  *United

States v. Olano*, 507 U.S. 725, 739 (1993). A mere possibility of prejudice does not satisfy this

test.  *Id.* at 739; *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (finding that federal habeas

court cannot grant relief on any ground asserting trial error unless court is convinced that "the

error had substantial and injurious effect or influence in determining the jury's verdict").  I find

no indication that the juror's comment had a "substantial and injurious effect" on the verdict.

---

[7] However, the state court noted that Hill's trial counsel averred in her affidavit that neither she, nor Hill, heard the
comment by the juror during trial.  It was only after reviewing the transcripts that it became apparent that a juror had
commented.

Therefore, I cannot find that the state courts' disposition of these claims was contrary to, or an unreasonable application of, federal law or that it was based on an unreasonable determination of facts.  Accordingly, I will dismiss Hill's claim 5.

In claim 6, Hill asserts that counsel provided ineffective assistance by failing to adequately impeach the testimony of the victim, Betty Dunkley, at trial.  Hill claims that counsel should have impeached Dunkley using medical records related to her illegal drug use, statements she made to the police, and photographic evidence of the crime.  The record shows that trial counsel did cross-examine Dunkley regarding her drug use, bringing to light that she had smoked marijuana and may have used cocaine in the days prior to the incident.  *See* Trial Transcript, pp. 155–61.

Hill also states that counsel should have impeached Dunkley's trial testimony that she could not remember certain events, such as the number of gunshots fired, with statements she made to the police at the time of the incident.  The state court found it was "sound trial strategy not to confront her with the prior statements, that may well have refreshed her recollection of events, or otherwise inform the jury of the forgotten details of the assault."  The court continued, "given the clear tactical advantage to ***not*** presenting what might have been extremely damning testimony, counsel's performance was not constitutionally deficient."  Further, because Hill did not proffer the additional testimony that counsel should have elicited, he could not meet his burden to show a reasonable probability of a different outcome.

Finally, Hill claims counsel should have used photographic evidence to impeach Dunkley's testimony.  Dunkley testified at trial that Hill assaulted her through the car window, using his hands, fists and a gun.[8]  (Trial Transcript, p. 87)  However, Hill claims that

---

[8] Hill also claimed, both in his habeas petition in the state court and in his federal habeas petition, that counsel was ineffective for failing to impeach Dunkley using evidence that she knew Hill was going to check their son out of

photographs of the car show that the car window was up, and he could not have struck her through the window.  The state court found that "the undisputed evidence . . . was that Hill severely beat the victim with his fists and the gun.  Whether the beating occurred through an open window or an open door is of no import to the case. . . . Hill would not have benefited from cross-examination on this point."

It is settled law that an attorney's trial tactics deserve a high degree of deference in habeas review.  *See Darden v. Wainwright*, 477 U.S. 168, 186 (1986). A counsel's decisions regarding which witnesses to call, what objections to raise, and how to cross-examine witnesses are all tactical matters.  *See Matthews v. Evatt*, 105 F.3d 907, 921 (4th Cir. 1997).  This Court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts.  Accordingly, I will dismiss Hill's claim 6.

In claim 7, Hill asserts counsel was ineffective for failing to use the 911 summary report to impeach witness testimony at trial.  Hill claims the police officers' arrival times to the scene of the crime, and the order in which the officers arrived, prove they could not have "seen and/or did what" they testified to.  The state court found that the order the police arrived on the scene was irrelevant to any factual issue before the jury, because by the time the police arrived, the crimes had been completed.  Noting that the court should defer to trial counsel regarding tactical matters

---

school on a day before the crime, evidence that Hill was attempting to obtain child custody, unspecified potential testimony from neighbors Mr. and Mrs. Satterfield who may have seen some part of the incident, the bullet hole in Hill's t-shirt, and phone records from the jail, in which Betty admitted she pulled the trigger on the gun.   While the state court did not address these specific claims, they have no merit under *Strickland*.  Dunkley admitted during direct examination that she may have pulled the trigger on the gun at one point when she and Hill were fighting. Hills' arguments fail to demonstrate a reasonable probability of a different outcome.  Further, Hill's allegations do not rise to the level of ineffective assistance because objecting to or impeaching witness testimony is clearly trial strategy. The court generally is reluctant to second-guess a trial lawyer's tactical decisions. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977).

such as how to cross-examine witnesses, the state court found "[no] reasonable probability of a different outcome had counsel quibbled with officers over who arrived on the scene first."

This court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. *See Darden*, 477 U.S. at 186 (1986); *Matthews*, 105 F.3d at 921. Accordingly, I will dismiss Hill's claim 7.

In claim 8, Hill asserts counsel was ineffective for failing to interview and investigate Virginia State Police Officer D.H. Hess, who was at the scene with local police when the events occurred. Hill claims counsel should have obtained his version of events, as well as the recordings on his dashboard camera. Hill states this would have uncovered exculpatory evidence; however, he fails to state what the evidence would have shown. The state court found that Hill's failure to make a proffer regarding what the evidence would have revealed "is fatal to his claim."

When a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004); *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (dismissing claims where petitioner failed to make a specific proffer of the testimony of the omitted witness). Because Hill provided no information regarding the contents of Officer Hess' testimony or his dashboard camera, this court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, I will dismiss Hill's claim 8.

In claim 10, Hill asserts counsel was ineffective for failing to present evidence to support the defense of, and jury instruction regarding, involuntary intoxication.  Hill argues that counsel had sufficient evidence to support the defense, including Hill's medical and prescription records, as well as lay witnesses able to testify as to how Hill was affected by his medications.  Hill states his counsel was ineffective by failing to show that his taking of methadone and valium caused his behavior, supporting the defense of involuntary intoxication.  The state court rejected Hill's argument that, because the license of the physician who had been prescribing his back pain medication was revoked for improperly prescribing narcotics, Hill was involuntarily intoxicated at the time of the crime.  The state court found that Hill failed to establish that the doctor was incorrectly prescribing medication to Hill and also failed to establish that his ability to reason was "so unsettled that it prevented him from exercising his own free will."  The court further noted that Hill's proffered exhibit showed that Hill had actually been taken off methadone prior to the assault.

Under Virginia law, involuntary intoxication is an affirmative defense.  *Shortt v. Commonwealth*, 2010 Va. App. LEXIS 442 (Va. Ct. App. Nov. 9, 2010).  To establish a defense of involuntary intoxication, Hill was required to establish: (1) he was unwillingly and unknowingly drunk by the fraudulent contrivance of others; and (2) the drunkenness so unsettled his ability to reason as to prevent him from exercising his own free will.  *See Director of Dep't of Corrections v. Jones*, 229 Va. 333, 339 (1985).  Because Hill failed to show that sufficient evidence existed to support an affirmative defense regarding involuntary intoxication, this court finds that the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts.  Accordingly, I will dismiss Hill's claim 10.

14

In claim 11, Hill asserts his counsel was ineffective for failing to present evidence to support the defense of insanity.  Hill claims that counsel could have shown "settled insanity" from his "prolonged and excessive abuse of prescription narcotic pain medication and/or that he was insane at the time of the offense."  (Docket No. 11-7, p. 18).  Counsel filed a motion for a competency evaluation and to evaluate Hill's mental status at the time of the offense.  A.J. Anderson, Ph.D., a licensed clinical psychologist, conducted the evaluation and concluded that Hill was "attempting to present himself as psychiatrically ill and incapacitated when in fact his psychiatric problems are no more than moderate."  (Docket 11-8, p. 21)  Dr. Anderson further stated, "[t]his is the most thoroughly malingered protocol this examiner has ever considered." *Id.*  Hill asserts that his counsel should have gotten a second mental examination because the examination performed was inadequate.  However, the state court found that there was no basis for counsel to present an insanity defense because Hill was examined by a psychologist who found that he was not insane at the time of the offense.

I find that counsel was not ineffective for failing to file a frivolous motion seeking a re-evaluation when there were no grounds in support thereof.  *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (holding counsel not required to file frivolous motions).  Moreover, Hill's mental condition was thoroughly explored prior to his trial, and he was found not to be insane at the time of the crime.  This Court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts.  Accordingly, I will dismiss Hill's claim 11.

In claim 12, Hill asserts that counsel was ineffective for failing to adequately consult and inform him of "ongoing matters" regarding his trial and defense.  Hill states his counsel spent

approximately twelve hours with him, preparing for trial.  The state court found that Hill failed to establish ineffective assistance under either prong of *Strickland,* noting that there is no minimum number of times counsel must meet with his client in order to provide effective assistance.[9]  This Court finds that based on the record before it, the state court's adjudication of Hill's claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, I will dismiss Hill's claim 12.

## IV.

For the reasons stated herein, the court grants respondent's motion to dismiss and dismisses Hill's § 2254 petition.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the parties.

**ENTER:**     This  17th  day of June, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9]The state habeas court noted that counsel averred she met with Hill numerous times and discussed all aspects of the trial with him, including discovery, pre-trial motions, and whether Hill would testify at trial.

16